380 So.2d 1052 (1979)
Horace C. SELLARS, Appellant,
v.
FLORIDA REAL ESTATE COMMISSION, Appellee.
No. MM-455.
District Court of Appeal of Florida, First District.
November 14, 1979.
As Amended On Denial of Rehearing March 28, 1980.
*1053 Carl R. Pennington, Jr. and Russell D. Gautier of Pennington, Wilkinson, Gary & Dunlap, Tallahassee, for appellant.
Howard Hadley and Kenneth M. Meer, Orlando, for appellee.
ROBERT P. SMITH, Jr., Judge.
Sellars appeals from a Florida Real Estate Commission order revoking his real estate broker's license for:
(a) Violation of section 475.25(1)(a), Florida Statutes (1977), which proscribes "fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing, trick, scheme or device, culpable negligence, or breach of trust in any business transaction ...";
(b) Violation of section 475.25(1)(h), authorizing discipline of a broker who "[r]endered an opinion that the title to any property sold is good or merchantable, except when correctly based upon a current opinion of a licensed attorney at law, or failed to advise a prospective purchaser to consult his attorney on the merchantability of the title or to obtain title insurance...";
(c) Violation of Fla. Admin. Code R. 21V-10.01, which makes it "fraudulent and dishonest dealing for any broker or salesman to sell or offer for sale any property where he has notice that the title is not merchantable, or upon which he has notice that a mortgage or other lien exists, and about which he fails to inform the purchaser before any portion of the purchase price is paid"; and
(d) Violation of section 475.25(3), which authorizes revocation of a broker's registration "if he shall be found guilty of a course of conduct or practices which show that he is so incompetent, negligent, dishonest or untruthful that the money, property, transactions and rights of investors or those with whom he may sustain a confidential relation, may not safely be entrusted to him."
We find substantial competent evidence tending to support the lengthy findings of fact prepared by a DOAH hearing officer and adopted by the Commission, supporting the Commission's conclusion that Sellars, whose closely-held corporation gave $1,000 for a quit-claim deed to 80 acres of Wakulla County land, sold portions of it, with actual and constructive knowledge that the corporation had no merchantable title, by means of false or misleading assurances to several purchasers.
*1054 A registered real estate broker may be disciplined for his dishonest conduct of business affairs for his own account, as well as for such conduct in transactions in which his only interest is as a broker. McKnight v. Florida Real Estate Commission, 202 So.2d 199 (Fla. 2d DCA 1967), cert. den., 209 So.2d 672 (Fla. 1968). Because revocation was among the disciplinary remedies available to the Commission, by virtue of Sellars' violation of section 475.25(3), we will not undertake to substitute our judgment, concerning an appropriate disciplinary measure, for that of the Commission. Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1979).
The only substantial matter of law to be considered is whether the 1979 Legislature, by enacting chapter 79-239, Laws of Florida, terminated the Commission's disciplinary power over the broker who is guilty of dishonest dealing, for his own account, with property "in which he is a part owner." Chapter 79-239 revived and made housekeeping revisions to chapter 475, saving it from repeal by the Sunset Law, chapters 76-168 and 77-457, Laws of Florida, and in doing so amended the "exemption" section as follows:
475.011 Exemptions.  This chapter does not apply to:
.....
(2) Any person who deals with property in which he is a part owner, unless he receives a larger share of the proceeds or profits from the transaction than his proportional investment therein would otherwise justify, such excess share being directly or indirectly the result of the service of buying, selling, exchanging, or leasing the property; ... .
Insofar as it is pertinent here, the 1979 amendment simply created a new section 475.011 to list exemptions from the chapter which previously were set out in a rather less convenient form by section 475.01(2), Florida Statutes (1978 Supp.). That section provided:
... nor shall the term broker or salesman be applied to a person who shall deal with property in which he is a part owner, unless said person shall receive a larger share of the proceeds or profits from the transaction than his proportional investment therein would otherwise justify, such excess share being directly or indirectly the result of the service of buying, selling, exchanging or leasing said property; ...
The 1979 act did not operate to divest the Commission of jurisdiction to discipline a registered broker who in a business transaction concerning his own real estate is guilty of dishonest dealing. Both the former and the present exemption provisions simply excuse from registration as a broker one who conducts broker-like activities for two or more owners, of whom he is one, unless he receives what is, in effect, a brokerage fee. If the 1979 Legislature had intended a substantive revision terminating the Commission's power to discipline registered brokers for breach of trust in activities concerning their own real estate, the legislature would have acted less ambiguously to that effect. We can conceive of no reason why, having a purpose to exempt registered brokers from discipline for objectionable conduct in their own real estate transactions, as contrasted with those of their clients, the Commission's disciplinary powers would have been terminated only as to the broker who was "a part owner" of the land dishonestly dealt with, not touching the Commission's powers over the broker who wholly owned that land. Reading the 1979 amendment with a purpose to give it the legislature's intended effect, we conclude that the Commission retains power to discipline for dishonest dealings brokers who so deal with property owned partly or wholly by them, and from the sale of which they receive no brokerage fee as such.
Having found that the Commission may properly revoke the license of a broker who violates Sections 475.25(1)(a) and (d), and Section 475.25(3), Florida Statutes (1977), and Fla. Admin. Code R. 21V-10.01, in selling his own or his closely-held corporation's property, we need not reach the more troublesome issue of whether Section 475.25(1)(h), Florida Statutes (1977), by its *1055 terms applies to brokers not acting as brokers for the account of others.
AFFIRMED.
MILLS, C.J., concurs.
MITCHELL, HENRY CLAY, Jr., Associate Judge, dissents.
MITCHELL, HENRY CLAY, Jr., Associate Judge, dissenting.
I respectfully dissent.
I would reverse the order of the Florida Real Estate Commission revoking the Appellant's real estate broker's license. It is my determination from a review of the record that the findings of fact of the commission were not based upon competent substantial evidence.
The commission filed a twenty-eight count administrative complaint against the Appellant, Sellars, alleging that he knowingly sold certain property with non-merchantable title to several purchasers without informing them of such non-merchantability, that he failed to advise these purchasers to consult an attorney on the merchantability of the title or to obtain title insurance and that he failed to pay certain real property taxes on behalf of two purchasers.
After the hearing on the complaint, the hearing officer ruled against Sellars and in favor of the commission on substantially all issues of fact and law and recommended that Sellars' license be suspended for a period of two years. In its final order, the commission adopted the findings of fact and conclusions of law as set forth in the recommended order but rejected the recommended penalty by increasing the penalty to a revocation of Sellars' license.
The thrust of the commission's complaint was based upon the sale of certain parcels of land by Sellars. The property with title problems came from Tract 3 which was one of the five tracts of land originally purchased by Sellars. The first tract of land was purchased from Kenneth Thomas after Thomas offered it for sale to Sellars. Prior to the purchase of Tract 1, Sellars retained a local attorney to examine title to this property and render a title opinion. Based upon this attorney's opinion that the title was clear, Sellars completed the purchase of Tract 1. Later, Sellars purchased a second tract of land from Thomas. Again, the sale was completed after Sellars received a title opinion from his attorney that the title was clear and merchantable. Sellars later purchased Tracts 3, 4, and 5, from Joyce Thomas, the wife and guardian of Kenneth Thomas who had, at this time, been declared legally incompetent. Prior to purchasing these three tracts, Sellars returned to his attorney and requested that he examine title to these properties and render a title opinion. The attorney advised Sellars that title was clear and merchantable to Tracts 3 and 5, but the title to Tract 4 was clouded. The sale of these three tracts was completed only after the guardian petitioned the court for an order approving the sale and after the sale was duly approved by the court. The petition requesting the court to allow the sale stated that one tract had title problems.
Sellars subsequently sold parcels of Tract 3 to several parties. Sellars did not advise the purchasers that they should either obtain title insurance or consult an attorney with regard to the transaction. All of the sales by Appellant, Sellars, were completed by contracts for deed and/or warranty deeds. The record reflects that Sellars crossed out provisions in the contracts for deed relating to the furnishing of abstracts. It was the agreement between Sellars and the purchasers that the purchasers would bear the cost and the responsibility of obtaining any abstracts. Thus, the provision regarding abstracts was consistently crossed out on many contracts for the sale of the property from the various tracts, and this practice was not limited to sales made from Tract 3 which later proved to have title problems.
When parcels of this property were sold under contracts for deed, Sellars and the purchasers entered into an agreement whereby Sellars would pay the real property taxes on the property on behalf of these *1056 purchasers. This arrangement proved to be completely unsatisfactory to everyone concerned when some of the property owners failed to pay to Sellars their portion of the taxes and when Sellars' bookkeeper failed to collect and pay the taxes. The problem continued, the taxes were not paid and tax certificates were sold on two parcels. Sellars purchased one of the certificates in an effort to insure that he would be reimbursed for taxes which were paid. The other certificate was purchased by a third party who obtained it in the presence of Sellars by initially bidding the lowest possible bid. This certificate was later redeemed by Sellars. Throughout the purchases of subsequent sales of this property, there was never any indication of title problems with any parcel other than Tract 4 until Sellars was contacted in 1974 by an attorney representing one of the purchasers of a part of Tract 3. These purchasers desired to pay off the balance owing on their land and retain the attorney to represent them in paying off the balance and obtaining title insurance. This attorney was unable to obtain title insurance on the property for the purchasers and so informed Sellars. Considering the fact that his attorney had rendered an opinion that the title to Tract 3 was clear and the fact that these purchasers ultimately paid the balance due on their property, Sellars continued to believe that no title problems existed to Tract 3. It was not until he was later contacted by another purchaser from Tract 3 that he became concerned about title problems associated with this tract. At this point, he discontinued any further sale from Tract 3 and contacted another law firm in an attempt to ascertain what problems, if any, existed in the title to Tract 3. Sellars was informed by these attorneys that there were, in fact, title problems to Tract 3. The nature of the existing title problem is that although Kenneth Thomas is in the chain of title to Tract 3, there is no official record of conveyance of Tract 3 to Thomas. After being informed of such title problems, Sellars authorized and employed a law firm to take any and all action necessary to cure the title problems.
First, the finding of fact that Sellars should have known that title of Tract 3 was not merchantable was not supported by competent substantial evidence. The commission argues that the petition for order approving sale and the order approving sale established the price paid for Tracts 3, 4, and 5, and these documents show that Sellars had knowledge of the title problem. The petition and order reflect that a portion of the property sold had title problems which could not be cleared. There is no evidence in the record that shows that Sellars ever saw, examined or otherwise had any knowledge of these documents or that he was present at a hearing on the petition and order. The commission further relied on the fact that Sellars failed to inspect the public record of Wakulla County, Florida, which would have disclosed the title problem associated with Tract 3. This case involved the question of knowledge, and the broker cannot be found guilty of selling property with knowledge that the property had title problems when the attorney advised him that title to the property was clear and when having no contrary knowledge, he relied upon this advice. The fact that the public records may have provided constructive notice to Sellars as a subsequent purchaser has no bearing on the questions raised in the administrative proceedings. Constructive notice serves an obvious purpose in real estate transactions, but it cannot serve to impute actual knowledge for the purpose of disciplinary proceedings.
Second, the commission argues that Section 475.25(1)(h), Florida Statutes (1977), provides that registration may be suspended if the broker:
"(h) Rendered an opinion that the title to any property sold is good or merchantable, except when correctly based upon a current opinion of a licensed attorney at law, or failed to advise a prospective purchaser to consult his attorney on the merchantability of the title or to obtain title insurance."
The commission contends that this chapter applies to brokers acting in transactions in which they sell for their own account. I *1057 disagree. Under the provisions of Chapter 475, Florida Statutes, the commission has authority to discipline a broker for transactions or acts not performed in the broker's capacity as a broker, but it is obvious that this particular provision of Chapter 475 would not apply to one who deals with his own property, since it imposes a duty that is peculiar to one acting in his capacity as a real estate broker. That duty does not exist unless the broker is acting in this capacity.
Third, the commission adopted the finding that the broker, Sellars, was guilty of fraud, misrepresentation concealment, false promises, false pretenses, dishonest dealing, trick, scheme, or device, culpable negligence and breach of trust in the business transaction in violation of Section 475.25(1)(a), Florida Statutes (1977), for the broker's failure to pay real property taxes on property that he sold under contracts for deed. Sellars agreed with various purchasers to pay real property taxes on property sold under contracts for deed and these purchasers agreed to forward their pro-rata share of taxes to Sellars. The problem with this arrangement stemmed, in part, from certain purchasers failing to pay their pro-rata share of the taxes. This problem was also occasioned by the fact that Sellars assigned the responsibility of collecting and paying the taxes to his bookkeeper who failed to properly carry out this responsibility. Although Sellars may be guilty of not properly supervising his bookkeeper or of not exercising the best business judgment, there is not competent substantial evidence that Sellars attempted to cheat, trick or defraud anyone in violation of Section 475.25(1)(a) of the Florida Statutes.
Finally, under Count 28 of the administrative complaint, the commission, as provided for under Section 475.25(3) of the Florida Statutes (1977), found a course of conduct or practices which show that the broker was so incompetent, negligent, dishonest and untruthful that the money, property, transactions and rights of an investor or those with whom he may sustain a confidential relation, may not be safely entrusted to him. However, having reviewed the record, I find no conduct on the part of the broker of the character proscribed by the statute.